**Russell Marquee BARNES,
Petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. CX–91–2401.**

Court of Appeals of Minnesota.

Sept. 8, 1992.

Review Denied Nov. 3, 1992.

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. State Public Defender, St. Paul, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Darrell C. Hill, Asst. Ramsey County Atty., St. Paul, for respondent.

Considered and decided by DAVIES, P.J., and LANSING and NORTON, JJ.

## OPINION

DAVIES, Judge.

This appeal is from an order denying a postconviction petition seeking the withdrawal of appellant Barnes' plea of guilty to aggravated robbery. We reverse and remand.

## FACTS

Appellant Russell Barnes was charged with first degree burglary, aggravated robbery, and four counts of second degree assault. Barnes pleaded not guilty and the case went to trial.

On the second day of jury deliberations, one of the jurors became ill. The trial court gave Barnes a choice whether to have a mistrial declared, or to proceed with 11 jurors. Barnes decided to proceed with the 11 remaining jurors.

The jury was unable to reach a decision and the trial judge assembled the parties in chambers on the afternoon of the third day of deliberations. The court disclosed notes from the jury, one of which was from the previous evening, and reported the jury was deadlocked at an 8–3 vote. A more recent note, dated the same day, indicated the jury "continue[d] to be split on all counts," and gave the votes that had been taken, without indicating whether majorities favored guilty or not guilty. The trial court indicated it was thinking of letting the jury deliberate through that evening, then declaring a mistrial. The prosecutor urged that a mistrial be declared, while

defense counsel stated he would have to talk with Barnes. The trial court indicated its intent to keep the jury at the courthouse until 10 p.m.

Defense counsel testified that he was called to the courthouse at about 9:30 p.m. that evening, for the apparent purpose of discharging a hung jury. At the urging of the court, plea discussions were then renewed because a mistrial seemed certain. When the jury was called in, however, they reported that they were making progress and further deliberations would be useful. Jury deliberations and plea negotiations continued.

Barnes had rejected the prosecutor's first offer to dismiss the other charges if Barnes pleaded guilty to aggravated robbery, with no agreement as to sentence. After the jury reported progress, the prosecutor offered to add an agreement that the sentence would not exceed 64 months. Defense counsel took this offer to the county jail and talked to Barnes, who refused it.

When defense counsel called to inform the court of Barnes' refusal of the offer, the judge's court reporter informed counsel that the jury had reached a verdict. Defense counsel also learned, either through the court reporter or directly from the prosecutor, that the plea offer was still open. Defense counsel returned to Barnes and told him what he had learned, stating it was Barnes' decision whether to accept, but that he'd have to make the decision quickly. They then returned to the courthouse, where they discussed the votes reported by the jury earlier. When the trial judge entered the conference room, the judge was told no decision had been reached on a plea. Barnes testified that he had the impression the judge knew something which he (Barnes) did not, and that the judge was doing him a favor by delaying return of the jury's verdict so Barnes could consider the plea offer. Barnes reasoned that the judge would not have been holding up the verdict unless it was a guilty verdict. Defense counsel testified that neither he nor Barnes asked the trial judge anything while he was in the conference room, and that Barnes had still not made a decision when they re-entered the courtroom.

Barnes then agreed to enter a guilty plea to aggravated robbery under *State v. Goulette*, 258 N.W.2d 758 (Minn.1977). He denied committing the offenses charged, but admitted he was present at the time. The trial court accepted the guilty plea, ending the trial. Nonetheless, following acceptance of the plea, the jury verdict of not guilty was made known. Prior to sentencing, Barnes moved to vacate the plea as involuntary and against the interests of justice. Barnes also moved for judgment of acquittal. The trial court denied both motions.

Barnes filed a postconviction petition, again seeking to withdraw his guilty plea. The trial court, although noting the unusual circumstances under which Barnes pleaded guilty, denied the petition, finding that Barnes was given a reasonable time to consider his plea and concluding that the plea was voluntarily entered.

## ISSUE

Did the trial court abuse its discretion in denying the postconviction petition for withdrawal of the guilty plea?

## ANALYSIS

To be valid a guilty plea must be voluntary, knowing, and intelligent. *State v. Trott*, 338 N.W.2d 248, 251 (Minn.1983). A guilty plea may be withdrawn before sentencing if it is "fair and just" to do so. Minn.R.Crim.P. 15.05, subd. 2. A plea may be withdrawn after sentencing "to correct a manifest injustice." Minn.R.Crim.P. 15.-05, subd. 1; *State v. Weisberg*, 473 N.W.2d 381, 383 (Minn.App.1991). The trial court's decision whether to allow withdrawal of a guilty plea is reviewed under an abuse of discretion standard. *Kim v. State*, 434 N.W.2d 263, 266 (Minn.1989).

The state argues that the "manifest injustice" standard applicable to postsentencing withdrawal motions should be applied. *See* Minn.R.Crim.P. 15.05, subd. 1. Barnes, however, made a motion to withdraw the plea *before* sentencing. That motion would have been considered under the "fair and

just" standard when it was made, and also on appeal. Although the request for withdrawal of the plea that is before us was made after sentencing, the petition merely reiterated the earlier motion. If the stricter "manifest injustice" standard is applied now, that would penalize Barnes unfairly for seeking an evidentiary hearing to make a more inclusive record for postconviction review; the issue had already been preserved for appeal. We will use the abuse of discretion standard.

■ Barnes contends that the jury unexpectedly reaching a verdict after three days of deliberations created a stressful circumstance that made his plea involuntary. Although it is doubtful that time pressures by themselves could make a plea involuntary, we must consider Barnes' claim in the context of postverdict plea bargaining. We conclude that, under the circumstances of this case, no public policy justified placing Barnes under the stress of a plea negotiation which amounted to nothing more than a wager on the verdict the jury had already reached.[1]

■ In approving the practice of plea bargaining, the supreme court has spoken of "the right of a defendant to be protected from improvident 'plea bargaining.'" *State v. Johnson*, 279 Minn. 209, 214, 156 N.W.2d 218, 222 (1968). The court has stated:

> Plea bargaining between competent counsel and with the intelligent acquiescence of the defendant, * * * is not in conflict with public policy.

*Id.* Plea bargaining serves the important function of reducing the number of cases to be tried, thereby alleviating the burden on the courts. *Id.* at 214 n. 2, 156 N.W.2d at 222 n. 2. Postverdict plea bargaining does not serve this function, however, except as to appeals.

The trial court may accept a plea agreement "when the interest of the public in the effective administration of justice would thereby be served." Minn.R.Crim.P.

15.04, subd. 3(2). A number of factors are to be considered in determining whether a negotiated plea has such support. Minn. R.Crim.P. 15.04, subd. 3(2)(a)–(f). Those policies are not significantly served in this case. Because trial was substantially completed, the plea did not avoid trial or alleviate delay in the disposition of other cases. *See* Minn.R.Crim.P. 15.04, subd. 3(2)(d), 3(2)(f). From this record, it does not appear that the plea hastened sentencing, made alternative correctional measures possible, or resulted in Barnes' cooperation with police on other cases. *See* Minn. R.Crim.P. 15.04, subd. 3(2)(a), 3(2)(c), 3(2)(e).

Neither, in this case, did it serve any function that would justify foregoing the considered judgment of the fact-finder as to the guilt or innocence of the defendant. Barnes entered a guilty plea under *State v. Goulette*, 258 N.W.2d at 761, denying his guilt of the charges against him, including the aggravated robbery charge to which he pleaded guilty. Thus, the plea did not serve the purpose of an acknowledgement of guilt. *See* Minn.R.Crim.P. 15.04, subd. 3(2)(b).

We acknowledge that in some circumstances a postverdict guilty plea may serve some of the purposes for which plea bargaining has traditionally been recognized. We pass no judgment on the situation of a defendant's freely acknowledging guilt and bypassing the jury's verdict. We recognize, however, that society has an interest in the accurate adjudication of criminal charges. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). What occurred here was an unadorned wager on the jury's decision.

We acknowledge that in any plea negotiation a defendant's estimation of the likely verdict of a jury is a principal factor in his decision. A defendant may plead guilty simply out of fear that a jury will find him guilty. *State v. Bradley*, 293 Minn. 445, 446, 196 N.W.2d 604, 605 (1972); *see also*

---

**1.** In his post-trial motion, Barnes claimed that representations made by the trial judge caused him to plead guilty. At the postconviction hearing he testified, however, only that he made an

assumption based on the judge's action in holding up the jury verdict. Our decision here is not based on any assertion of misconduct by the trial judge.

*Goulette*, 258 N.W.2d at 761 (guilty plea may be accepted although defendant maintains his innocence). However, in this case, Barnes had little time to adjust from the near-certain prospect of a mistrial to the necessity of speculating on what the jury's verdict was going to be. Barnes had steadfastly refused all plea offers and passed up an opportunity for a mistrial. By all indications, he was intent on seeing the trial through to its conclusion.

The trial court encouraged plea bargaining when a mistrial appeared inevitable and when a negotiated plea could have avoided the necessity of a new trial. Once a verdict had been reached, however, the parties continued plea negotiations without any apparent thought or direction from the court as to whether a plea was still appropriate or unduly stressful on Barnes. It cannot be said that Barnes "intelligently acquiesce[d]," *Johnson*, 279 Minn. at 214, 156 N.W.2d at 222, in the postverdict plea bargaining. We conclude that the plea was involuntary, improvident, and lacking the intelligent acquiescence of Barnes.

### DECISION

The trial court abused its discretion in denying appellant's motion to withdraw his guilty plea.

Reversed and remanded.