# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0835

Jetaun Helen Wheeler, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 23, 2017**
**Affirmed**
**Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-13-27810

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Halbrooks, Judge; and Kirk, Judge.

## S Y L L A B U S

A district court does not impermissibly involve itself in plea negotiations when it encourages plea discussions between counsel, monitors those discussions, and informs counsel of those plea proposals of which the court would likely disapprove.

**RODENBERG**, Judge

Appellant Jetaun Helen Wheeler was convicted after her plea of guilty to aiding and abetting second-degree unintentional murder for her role in the murder of E.S.  Appellant challenges the district court's summary denial of her petition for postconviction relief, which alleged that the district court improperly inserted itself into the negotiations that resulted in appellant's guilty plea.  Because appellant was not entitled to an evidentiary hearing and the district court did not improperly insert itself into plea negotiations, we affirm.

**FACTS**

In August 2013, appellant was charged with second-degree intentional murder after police officers searched appellant's home pursuant to a warrant.  The body of E.S., who had been missing for several weeks, was found in appellant's freezer.  Before trial, two of appellant's three children revealed to therapists that, on the night E.S. died, they had witnessed their mother and her friend holding E.S. down and striking him.  The children also told prosecutors that they asked their mother the next day about a red stain on the rug.  They were told that it was ketchup.  Appellant moved for and was granted a competency hearing concerning whether the children would be competent to testify as witnesses at trial.  Her request for a hearing on whether the children's testimony had been tainted by outside influence was denied by the district court.

The district court requested that counsel for both parties make a good-faith effort to reach a resolution.  The district court stated, "It is a pretty serious situation to have children

2

of the defendant having to come to court and testify possibly against their own mother. Both of you should be considering this. So I would like to see some attempts made at trying to resolve this." Counsel for appellant replied that settlement efforts were stalled because the state would offer nothing less than a plea to second-degree intentional murder.

Nine days before the trial began, the state e-mailed the district court with an update on plea negotiations. The e-mail indicates that appellant had proposed pleading guilty to second-degree manslaughter, with a sentencing range between probation and 96 months in prison. The state had countered with an offer of second-degree unintentional murder, with a sentence of 240 months. The state indicated to the district court that it did not appear that the case would settle. The district court replied in an e-mail:

> The defendant's offer to enter a straight plea to manslaughter in the second degree with a waiver of Blakely for a double departure of 96 months in prison, much less for a probationary disposition, isn't something this court is willing to do. Given what facts the court is aware of, a plea to unintentional 2nd degree murder with a prison term the parties can agree on (something in the range of x months and 240 months) appears to be more realistic.

No plea agreement was reached before trial. The first day of trial testimony began on July 17, 2014. After the first day of trial, the district court stated to counsel for both parties, "I just wanted an update. It's my understanding that the state did get permission to offer to do an unintentional second-degree murder for some range within the box but zero criminal history points and is it also my understanding that the defendant declined?" Counsel for appellant explained that she would be meeting with appellant over the weekend to discuss appellant's trial testimony and that counsel would discuss the offer with

3

appellant "[i]f the opportunity arises." The state indicated that the children would not testify until the following week.

During the weekend following the first two days of trial testimony, counsel for appellant e-mailed the prosecutors, stating that appellant was willing to enter a plea of guilty to aiding and abetting second-degree unintentional murder, with a guidelines sentence to be determined by the district court. Counsel for appellant indicated that appellant was experiencing stress with her situation and wanted her children notified immediately that they would not need to testify.

When the parties returned to court on Monday, July 21, 2014, appellant filed a petition to enter a plea of guilty to aiding and abetting second-degree unintentional murder, with the understanding that she would receive a sentence within the range of 128 to 180 months. The district court accepted appellant's guilty plea based on appellant's sworn plea and factual recitation. It found that appellant made a knowing, voluntary, and intelligent waiver of her trial rights.

At the sentencing hearing, counsel for appellant argued for a 140 month sentence, stating, "I know the court, when we were negotiating this case, told me--told both counsel that you would not sentence [appellant] to the top of the box and you would not sentence her to the bottom of the box, that it would be somewhere in between." Before issuing the sentence, the district court noted that it had met two of appellant's children during the pendency of the case, and stated:

> I could tell right away that they were very smart, they were
> very well behaved, and that they were suffering. So, I am sort
> of appreciative of the fact that the parties were able to come to

4

some agreement about a range. And so, that kind of, sort of prompted [appellant] to enter into a plea to Unintentional Second Degree.

The district court sentenced appellant to 172 months in prison, with credit for time served.

In 2015, appellant filed a petition for postconviction relief, arguing that she was entitled to withdraw her plea because the district court had improperly participated in the plea negotiations.[1] Appellant's trial attorney provided an affidavit stating, "during an off-record conversation, the judge's law clerk suggested that the judge propose . . . a lesser offense to facilitate the plea negotiations." The affidavit states that the district court thereafter presented to the state the possibility of amending the charge to second-degree unintentional murder, an offer the state agreed to make. Appellant's trial attorney stated her belief that, "based on the court's off-record statements, that if [appellant] proceeded with trial, requiring that her children testify, the court would have held it against her throughout the trial through rulings from the bench and at sentencing." The affidavit states that the attorney conveyed her concerns to appellant. The trial prosecutors submitted affidavits stating that appellant's attorney suggested a plea to the amended charge of aiding and abetting second-degree unintentional murder, and that they did not recall involvement by the district court or its clerk in proposing a specific charge.

The district court denied appellant's petition for postconviction relief and her request for an evidentiary hearing, concluding that it had not improperly involved itself in

---

[1] The postconviction petition was considered by the district court judge who had presided at the jury trail and at the plea and sentencing hearings.

the plea negotiations, and that appellant was not entitled to an evidentiary hearing because her arguments were mere argumentative assertions with no support in the record.

This appeal followed.

## ISSUES

I.      Did the district court abuse its discretion by summarily denying appellant's postconviction petition for relief?

II.      Did the district court improperly involve itself in plea discussions, rendering appellant's plea invalid?

## ANALYSIS

Appellant argues on appeal that the district court abused its discretion both in denying her request for an evidentiary hearing and in denying her petition based on its determination that the district court did not impermissibly involve itself in plea negotiations.

"We review the 'denial of a petition for postconviction relief, as well as a request for an evidentiary hearing, for an abuse of discretion.'" *Morrow v. State*, 886 N.W.2d 204 (Minn. 2016) (quoting *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012)). "We review findings of fact for clear error and questions of law de novo." *Erickson v. State*, 842 N.W.2d 314, 318 (Minn. 2014). "A postconviction court abuses its discretion when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Griffin v. State*, 883 N.W.2d 282, 284 (Minn. 2016) (quotation omitted).

**I.**

We first address appellant's argument that the district court erred in denying her petition without holding an evidentiary hearing. A petitioner for postconviction relief is entitled to an evidentiary hearing when "material facts are in dispute that must be resolved in order to determine the issues raised on the merits." *State v. Caldwell*, 803 N.W.2d 373, 388 (Minn. 2011) (quotation omitted). A petition may be denied without an evidentiary hearing if "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014). In determining whether to deny a petition without an evidentiary hearing, the postconviction court must presume the facts alleged in the petition to be true. *Griffin*, 883 N.W.2d at 285 (citing *Bobo v. State*, 820 N.W.2d 511, 517 (Minn. 2012)). A petition may be denied without an evidentiary hearing when a petitioner "alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Bobo*, 820 N.W.2d at 517. The allegations in the postconviction petition must be "more than argumentative assertions without factual support" in order to entitle a petitioner to an evidentiary hearing. *Caldwell*, 803 N.W.2d at 388 (quotation omitted).

The district court denied appellant's petition without an evidentiary hearing because it concluded that appellant had provided only "vague, argumentative assertions" in support of her postconviction petition and that the allegations within her trial attorney's affidavit were insufficient to call a material fact into question. On review, we see no abuse of discretion in the district court's assessment of the need for an evidentiary hearing. As discussed in parts II and III below, the record contains sufficient and clear information

7

from which the district court could conclude that the allegations in the petition were legally insufficient to justify relief or were argumentative assertions without any factual support within the record. The affidavit of appellant's attorney does not allege that the district court made any plea offers to appellant, only that the district court's law clerk had a conversation with counsel about a possible plea agreement. And the affidavit provides no factual support for the attorney's concern that a failure to reach a plea agreement would be "held [] against her." The record contains e-mails to and from counsel contemporaneously demonstrating the facts leading up to appellant's guilty plea. The record before the district court was adequate to resolve the postconviction petition without an evidentiary hearing.

**II.**

Appellant challenges the district court's denial of her request to withdraw her guilty plea, arguing that the district court abused its discretion in finding that her plea was valid. The validity of a guilty plea is a question of law that we review de novo. *Nelson v. State*, 880 N.W.2d 852, 858 (Minn. 2016).

A district court "must allow a defendant to withdraw a guilty plea upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent. *Id.* A defendant's guilty plea is "per se invalid" if the district court impermissibly participated in plea negotiations. *State v. Anyanwu*, 681 N.W.2d 411, 414-15 (Minn. App. 2004). A

8

defendant bears the burden of showing that the guilty plea was invalid. *Raleigh*, 778 N.W.2d at 94.

Appellant's validity challenge to her guilty plea rests on whether the district court impermissibly participated in the plea negotiations. In *State v. Johnson*, the Minnesota Supreme Court examined the role of the district court in plea bargaining. 279 Minn. 209, 215-16, 156 N.W.2d 218, 223 (1968). The supreme court stated:

> The ultimate judicial responsibility must be to make reasonably certain that a person innocent of *any* crime has not been improperly induced to plead guilty to a crime. It is likewise a judicial responsibility to protect society against a defendant's being permitted to bargain for a plea excessively lenient for the gravity of the crime apparently in fact committed. Although the court should neither usurp the responsibility of counsel nor participate in the plea bargaining negotiation itself, its proper role of discreet inquiry into the propriety of the settlement submitted for judicial acceptance cannot seriously be doubted.

*Id.* The supreme court recognized that "[i]nevitably the judge plays a part in the negotiated guilty plea," but cautioned against excessive involvement by the district court in plea negotiations, noting that the district court's role is "not that of one of the parties to the negotiation, but that of an independent examiner" tasked with verifying the validity and appropriateness of the plea. *Id.* at 216 n.11, 156 N.W.2d at 223 n.11 (quotation omitted).

Applying *Johnson*, we have held that it is reversible error for a district court to accept a guilty plea that results from the district court's impermissible participation in plea negotiations. *Melde v. State*, 778 N.W.2d 376, 379 (Minn. App. 2010); *Anyanwu*, 681 N.W.2d at 414-15; *State v. Vahabi*, 529 N.W.2d 359, 360-61 (Minn. App. 1995); *State v. Moe*, 479 N.W.2d 427, 429 (Minn. App. 1992), *review denied* (Minn. Feb. 10, 1992).

9

Impermissible participation in plea negotiations has been characterized as a district court's "direct involvement in the negotiations, its imposition of a plea agreement, or its promise to impose a particular sentence." *Anderson v. State*, 746 N.W.2d 901, 905 (Minn. App. 2008).

A district court reversibly errs when it induces a guilty plea by a promise of a particular sentence, or when it imposes plea terms against the objections of a party. In *Melde*, we held that the district court improperly inserted itself into plea negotiations when it told the defendant that it would impose a 46-month executed sentence if he affirmed his guilty plea after the district court had rejected a proposed plea agreement. 778 N.W.2d at 379. In *Anyanwu*, we held that the district court erred when it promised and gave the defendant a 210-month sentence over the prosecutor's objection. 681 N.W.2d at 413, 415. We stated that "the district court directly and unequivocally promised the defendant a particular sentence in advance, and forced the plea bargain on the prosecutor." *Id.* at 415. In *Vahabi*, we held that the district court impermissibly participated in plea negotiations when it sentenced the defendant in a manner objected to by the state, and which led us to conclude that the "[t]he parties to [the] plea agreement were the court and the defendants, not the prosecution and the defendants." 529 N.W.2d at 361. And in *Moe*, we held that the district court impermissibly inserted itself into plea negotiations when it offered the defendant a downward departure from the sentencing guidelines over the prosecutor's objection, if the defendant cooperated with the police in an unrelated matter. 479 N.W.2d at 429.

Appellant argues that the district court facilitated a plea agreement by indicating to the parties that it would not sentence appellant to the top or bottom of the sentencing range. In *State v. Hannibal*, we rejected an argument that the district court impermissibly participated in plea negotiations where the record did not indicate that the district court had "'directly and unequivocally promised [the defendant] a particular sentence in advance' in exchange for a guilty plea." 786 N.W.2d 314, 318 (Minn. App. 2010) (quoting *Anyanwu*, 681 N.W.2d at 415); *see also Anderson*, 746 N.W.2d at 906 (affirming a finding of no promise when defendant's claim that she was promised a four-month sentence was negated by the plea petition and statements made by the defendant when she entered her plea). As in *Hannibal*, the record here does not indicate that an unequivocal sentencing promise was made to appellant before she accepted an offer from the state that she would plead guilty to an amended charge. The record indicates that the parties agreed, on the weekend following the start of the trial, to seek a sentence between 128 and 180 months on the amended charge. Appellant alleged in her plea petition, and confirmed in the plea colloquy, that no other promises concerning sentencing were made.

The only statement that insinuates the existence of a sentencing agreement between the district court and the parties is the statement by appellant's trial attorney at sentencing that the district court had told the parties that it would not sentence appellant to either the top or bottom of the sentencing range. Appellant and her trial attorney provided no statement or affidavit concerning whether any such agreement was made before appellant entered the plea petition, or whether it was after the court accepted the plea. In its order denying the postconviction relief, the district court noted that appellant had not provided

11

evidence concerning when the statement at issue was made, and it implicitly rejected appellant's assertion that such a statement had been made. We have previously held that a challenge to the district court's implicit denial of having made a sentencing promise, with only the defendant's assertion that such a promise was made, is an insufficient basis for this court to interfere with the district court's implicit conclusion that no sentencing promise was made. *Anderson*, 746 N.W.2d at 905. On the record before us, there is no evidence that any promise concerning sentencing was made by the district court to induce appellant to enter a guilty plea. And appellant's sworn plea colloquy expressly disclaimed the existence of any such promise. Because there is no support in the record for appellant's assertion that the district court induced her to enter a guilty plea by way of a sentencing promise, this argument fails as a mere argumentative assertion without factual support.

Appellant argues that the district court impermissibly participated in the plea negotiations by suggesting, after the start of the trial, that the state make an offer to settle the case by an amended charge of second-degree unintentional murder to which appellant would plead guilty. While a direct plea offer made by the district court to a party is an impermissible interjection into the negotiations and a usurpation of the responsibility of counsel, *Melde*, 778 N.W.2d at 378-79, the record before us indicates neither an offer, nor a suggestion of one, was made by the district court after the start of trial. The record indicates that the state offered to amend the charge to second-degree unintentional murder with a 240-month sentence at least nine days before trial. That offer was rejected by appellant. The record suggests that the state renewed an offer of a plea to second-degree unintentional murder before the start of trial and that negotiations intensified after the trial

12

began, and after the district court met appellant's children. At the end of the first day of trial, and in response to the district court's inquiry, appellant's trial attorney indicated that she had not discussed the state's most-recent plea offer with her client before appellant came to court for the day, but that she would speak with appellant over the weekend. It appears from the record before us that the only participation of the district court in the plea offer made before trial was the district court's inquiry into the status of the offer. A district court's inquiry into the status of ongoing plea negotiations is neither a usurpation of the responsibility of counsel nor an impermissible involvement with the plea negotiation process. Nor does the district court excessively involve itself in plea negotiations by monitoring the status of plea negotiations. This is undoubtedly part of its proper role of discreet inquiry into the propriety of settlements and was anticipated by the footnote in *Johnson* concerning the inevitable involvement of the district court in negotiated plea agreements. *Johnson*, 279 Minn. at 215-16, 216 n.11, 156 N.W.2d at 223, 223 n.11.

Finally, appellant argues that the district court excessively involved itself in plea negotiations by pressuring the parties to enter into a plea agreement so that appellant's children would not be called to testify against her at trial. She argues that the district court was so involved in plea negotiations that appellant and her trial attorney were left with the impression that failure to accept an offer would result in an unfair trial and sentence. This court has not published an opinion on whether, in the aggregate, comments by the district court encouraging settlement are sufficient to invalidate a plea under *Johnson* and its progeny.

13

The record contains several instances of the district court's inquiries concerning plea negotiations. The first instance was a statement by the district court encouraging the parties to extend offers because of the "serious situation" of having children testify against their own mother. The second instance was an e-mail from the district court in reply to the state's update on settlement negotiations. The district court wrote that the defendant's proposed plea offer to second-degree manslaughter with a sentence between probation and 96 months in prison "isn't something this court is willing to do," but that a plea to second-degree unintentional murder with a sentence term the parties could agree on "appears to be more realistic." The third instance of record occurred on the first day of trial, when the district court stated that it understood the state to have made an offer to allow appellant to enter a plea to second-degree unintentional murder, but that it understood that appellant had declined that offer. Appellant's trial attorney stated she would speak to her client about the offer over the weekend. The district court clarified with the parties that the district court would not address issues concerning the children's testimony before the next week. Several days later, and without any further communication to or from the district court, appellant entered her guilty plea. Finally, appellant asserts, as discussed above, that the district court suggested the final offer to the parties and that the district court made the statement concerning the sentencing range before she pleaded guilty.

Despite appellant's post-conviction contentions, she expressed no concern about the district court's fairness or neutrality in her plea colloquy. And appellant referenced no promises made to her by the district court either in the plea petition or in her sworn plea of

14

guilty. On the record before us, the district court did not excessively involve itself in the plea negotiation by facilitating and monitoring the negotiations.

Informing counsel that certain plea proposals would not be acceptable to the district court is part of the district court's proper role of discreet inquiry into the propriety of proposed plea agreements. Under *Johnson*, one of the district court's obligations in the plea-negotiation process is to review proposed plea agreements to ensure that any agreements "protect society" from excessively lenient plea bargains. *Id.* at 215-16, 156 N.W.2d at 223. This is precisely what the district court did when it informed counsel that "a straight plea to manslaughter . . . isn't something this court is willing to do." Finally, we note that the district court commendably, and without making any specific promises or threats, reminded the parties of the seriousness of a child being called to testify against her own parent.

**III.**

Because appellant's challenge to the district court's involvement indicates that she felt "improperly pressured" from the district court to plead guilty, we separately examine the voluntariness of appellant's plea. The requirement that a guilty plea be voluntary "ensures a defendant is not pleading guilty due to improper pressure or coercion." *Raleigh*, 778 N.W.2d at 96. "[T]he government may not produce a plea through actual or threatened physical harm, or by mental coercion overbearing the will of the defendant . . . ." *State v. Ecker*, 524 N.W.2d 712, 719 (Minn. 1994) (quotation omitted). "Whether a plea is voluntary is determined by considering all relevant circumstances." *Raleigh*, 778 N.W.2d at 96.

The affidavits of the attorneys show that both sides were actively involved in negotiating a plea agreement. Negotiations continued after the trial began, with appellant's attorney "strongly proposing an agreement for a plea to a lesser-included offense." After two days of trial, appellant accepted a plea agreement, expressing through her trial attorney that she was feeling stress over her situation, and was concerned that her children be immediately notified that they would not need to testify. At the plea hearing, an attorney for the state described the intensification of negotiations over the prior week and appellant's agreement to enter a guilty plea with a sentence within the presumptive guidelines range. Appellant confirmed that she spent a significant amount of time with her attorney examining the plea petition and considering the plea proposal. She confirmed that she understood the amended charge and that her sentence would be determined by the district court from within the agreed-upon range. Appellant confirmed that she had not been subjected to threats or promised anything outside of the plea agreement in order to facilitate her plea. After she provided a sworn factual basis for her plea, appellant confirmed that she was pleading guilty because she believed she was guilty of the amended charge.

The evidence demonstrates that appellant was experiencing stress from her circumstances, and was concerned about her children, but does not demonstrate that her guilty plea was a product of coercion or undue pressure from either the state or the district court. *See Raleigh*, 778 N.W.2d at 96 (holding that a defendant was not "improperly pressured" at the time of the plea hearing, even though he claimed he was under stress, because evidence demonstrated that the defendant suggested the plea); *Ecker*, 524 N.W.2d

16

at 719 (holding that a plea was voluntary despite pressure by the attorneys and prosecutor to enter a guilty plea, because the record demonstrated that the defendant stated he was making his own decision). Appellant's plea colloquy negates the assertion that her plea was the result of improper pressure. On this record, her plea was voluntary.

## D E C I S I O N

We conclude that the district court did not abuse its discretion when it denied appellant's postconviction request for an evidentiary hearing. The district court did not impermissibly participate in the plea negotiations by requesting updates on the negotiation process, by informing the parties of plea terms it would reject, or by impressing on all parties its legitimate concerns with having appellant's children testify at trial against their mother.

**Affirmed.**