CHUTICH, Justice.
In State v. Johnson , 279 Minn. 209, 156 N.W.2d 218, 223 (1968), we recognized the principle that a district court judge should not "participate in the plea bargaining negotiation itself." The present case requires us to clarify the meaning of "participate" and to determine the appropriate remedy when a defendant proves that the district court participated in the plea bargaining negotiation itself.
The district court in appellant Jetaun Helen Wheeler's case made unsolicited comments about the propriety of the parties' competing settlement offers, including charges and sentences, before the parties reached an agreement for the court to accept or reject. Wheeler ultimately pleaded guilty to an amended charge during trial. Over a year later, Wheeler filed a postconviction petition, alleging that "the parties would not have agreed to a plea deal" but for the court's participation in the plea negotiations. She alleged that the court's participation made her plea invalid and required a remedy of automatic plea vacatur. The postconviction court denied her petition for postconviction relief without holding an evidentiary hearing, and the court of appeals affirmed.
We hold that a district court "participates" in the plea bargaining negotiation when it provides unsolicited comments regarding the propriety of the parties' competing settlement offers. We also hold that, when a defendant successfully challenges the validity of a guilty plea because of the district court's participation, the remedy is not automatic invalidation and vacatur of the plea. Rather, the plea is only invalid if it was involuntary under the totality of the circumstances. Because the law in existence at the time Wheeler filed her postconviction *561 petition did not require a defendant to establish that her guilty plea was involuntary, we reverse the court of appeals and remand to the district court to give Wheeler an opportunity to amend her postconviction petition in light of the holdings that we announce today.
FACTS
The State of Minnesota charged Wheeler with second-degree intentional murder in August 2013. Because Wheeler had zero criminal history points, the charge carried a presumptive duration of 306 months in prison, with a range of 261 to 367 months. See Minn. Sent. Guidelines 4.A. Shortly after Wheeler was charged, defense counsel sought a plea to manslaughter, but the State did not move off the initial charge.
Plea negotiations were at an impasse until approximately 8 months later, when the State announced that it intended to call Wheeler's young children to testify against her. This announcement prompted the district court to become involved in the plea-negotiation process. Two weeks before trial, the court held a pretrial hearing to determine whether Wheeler's children should be allowed to testify. The court made the following on-the-record comments, in Wheeler's presence, encouraging both parties to negotiate:
I think ... you both have done a very thorough job of evaluating your case. There are positives, I'm sure, and negatives on both sides of the coin, so to speak, and I would - really like someone to extend an offer, at least make an attempt to try to resolve this case. It is a pretty serious situation to have children of the defendant having to come to court and testify possibly against their own mother. Both of you should be considering this. So I would like to see some attempts made at trying to resolve this.
The court further stated, "I don't care how you want to package it. ... There [are] wins and losses on a lot of elements in this case, and you never know what the jury is going to do."
Following this conversation, plea negotiations intensified between the parties. A week later, however, the State emailed the district court, with defense counsel copied, noting that "it does not appear that [this case] will settle" because the parties disagreed on the appropriate charge. The State had offered to reduce the charge to second-degree unintentional murder with a sentence of 240 months, and defense counsel had offered a plea to second-degree manslaughter with a sentence between probation and 96 months in prison.
The district court responded to both attorneys with unsolicited comments on the propriety of each party's settlement offer:
Thank you for the efforts you all have put towards settling this case. ... The defendant's offer to enter a straight plea to manslaughter in the second degree with a waiver of Blakely for a double departure of 96 months in prison, much less for a probationary disposition, isn't something this court is willing to do. Given what facts the court is aware of, a plea to unintentional 2nd degree murder with a prison term the parties can agree on (something in the range of x months and 240 months) appears to be more realistic.
No agreement was reached, so the case proceeded to trial the next week. At the end of the first day of trial, the district court requested an update on negotiations: "I just wanted an update. It's my understanding that the [S]tate did get permission to offer to do an unintentional second-degree murder for some range within the box ... [but] the defendant declined?" The parties confirmed this understanding, as well as defense counsel's intention to meet *562 with Wheeler that weekend to discuss the offer further. Wheeler alleges that at or around this time, the district court and its law clerk made additional off-the-record remarks proposing a plea to second-degree unintentional murder.
Before the start of the third day of trial, Wheeler pleaded guilty to the offense of second-degree unintentional murder under an aiding-and-abetting theory of liability. At the sentencing hearing, counsel for the State noted that "we're all thankful that [Wheeler's children] did not have to come ... testify, I know the [c]ourt wanted that more than anything." Defense counsel noted that Wheeler "gave up her right to trial ... to protect her children." The district court commented that it had met the children and could "tell right away ... that they were suffering[,]" so it was "appreciative of the fact that the parties were able to come to some agreement ... that kind of, sort of, prompted [Wheeler] to enter a plea to Unintentional Second Degree." The district court then sentenced Wheeler to 172 months in prison.
Over a year later, Wheeler filed a timely petition for postconviction relief, asserting that the district court had improperly participated in the plea bargaining negotiation. Citing Minnesota Rule of Criminal Procedure 15.05 and court of appeals precedent, she maintained that this judicial participation made her plea per se invalid and required plea withdrawal "to correct a manifest injustice." Wheeler's trial counsel submitted a supporting affidavit, alleging that, but for the court's participation, including on- and off-the-record comments, "the parties would not have agreed to a plea deal." Wheeler herself did not submit an affidavit.
The same judge that presided over Wheeler's trial denied her petition for postconviction relief without holding an evidentiary hearing, concluding that Wheeler's claims were merely "argumentative assertions" without factual support. The judge concluded that, despite being "unambiguously involved" in the plea negotiations, the district court had not improperly involved itself. The judge further concluded that the court's "sparse remarks" were a "far cry from pressuring the parties to settle" and that the court never promised or suggested "anything like a specific sentence."
The court of appeals affirmed. Wheeler v. State , 889 N.W.2d 807, 809 (Minn. App. 2017). Relying heavily on our commentary about the role of judges in plea bargaining in State v. Johnson , 279 Minn. 209, 156 N.W.2d 218 (1968), and analogizing to its own precedent, the court of appeals determined that "the district court did not excessively involve itself in the plea negotiation" because the court had neither made a direct plea offer nor made a promise or threat concerning sentencing. Wheeler , 889 N.W.2d at 816.
ANALYSIS
I.
A.
The threshold question in this case is what it means for a district court judge to "participate" in the plea bargaining negotiation itself. Although this question is one of first impression, we do not write on a blank slate. Fifty years ago in State v. Johnson , we observed that plea bargaining was a "prevalent practice" that was "not in conflict with public policy" so long as it was "controlled by the observance of certain essential conditions." 156 N.W.2d at 222. In discussing the "role" and "responsibility" of the district court judge in the plea bargaining process, we announced the principle that "the court should [not] ... participate in the plea bargaining negotiation *563 itself."[1] Id. at 223 (emphasis added). Although our holding in Johnson did not hinge on these comments, we gave comprehensive consideration to the role of judges, prosecutors, and defense attorneys in the plea process. We must now clarify what we meant in Johnson when we said that a district court judge should not "participate" in the plea bargaining negotiation itself. See id.
"The interpretation of case law is a legal question that is reviewed de novo." State v. Robideau , 796 N.W.2d 147, 150 (Minn. 2011). Under the de novo standard, we do not defer to the analysis of the courts below, but instead we exercise independent review. Kmart Corp. v. County of Stearns , 710 N.W.2d 761, 766 n.4 (Minn. 2006).
Johnson made three points regarding the role of the judge in plea negotiations. First, we envisioned an independent role for the judge, one that differed from the role of counsel. Johnson , 156 N.W.2d at 223 & n.11 (providing that "the court should [not] usurp the responsibility of counsel," and instead must remain an "independent examiner" of the plea's validity (citation omitted) (internal quotation marks omitted) ). Second, we contemplated that judges would not participate in the plea bargaining process until a guilty plea was "submitted for judicial acceptance." Id. at 223 ("[T]he court should [not] ... participate in the plea bargaining negotiation itself."); id. at n.11 (referencing how "the judge plays a part in the negotiated guilty plea[,]" but not "the negotiations themselves" (citation omitted) (internal quotation marks omitted) ). Third, we noted that, as an independent examiner of the negotiated settlement, the judge's "delicate role" was limited to a "discreet inquiry into the propriety of the settlement submitted for judicial acceptance." Id. at 223 & n.11.
Less than a decade after Johnson , the Minnesota Rules of Criminal Procedure were promulgated. Rule 15 sets forth procedures for guilty pleas, and Rule 15.04 specifically addresses "Plea Discussions and Agreements." It describes how "[t]he prosecutor must engage in plea discussions and reach a plea agreement with the defendant *564 only through defense counsel unless the defendant is pro se." Minn. R. Crim. P. 15.04, subd. 1 (emphasis added). And it addresses what the judge "must" do "[w]hen a plea is entered"-either "reject or accept the plea of guilty on the terms of the plea agreement." Id. , subd. 3(1).
But, unlike the rules governing civil trials, Rule 15 makes no mention of any involvement by the judge before the entry of the plea. Compare Minn. R. Civ. P. 16.01 (describing a trial court's objective at pretrial conference as "facilitating the settlement of the case"); Minn. R. Civ. P. 16.03(i) ("At any conference ... the court may take appropriate action, with respect to: ... settlement...."), with Minn. R. Crim. P. 15. In other words, the rule is silent as to what the judge may do, if anything, as criminal plea negotiations are ongoing. Rule 15, then, is not in conflict with the principle from Johnson that judges should not participate in the plea bargaining negotiation itself.
On at least two occasions since Johnson was decided and Rule 15 was enacted, we have signaled the continuing vitality of Johnson 's rule against judicial participation in plea bargaining. See State v. Schmit , 601 N.W.2d 896, 898 n.3 (Minn. 1999) ("[W]e take this opportunity to remind district court judges that a [district court] judge should neither usurp the responsibility of counsel nor participate in the plea bargaining negotiation itself. The proper role of the district court is limited to determining the appropriateness of the proffered plea bargain." (citation omitted) ); State v. Nelson , 257 N.W.2d 356, 359 n.1 (Minn. 1977) ("Trial judges should be very cautious not to impermissibly participate in plea negotiations.").
In recent years, the court of appeals has interpreted Johnson to instead mean that although a judge cannot "become excessively involved" in plea negotiations, State v. Anyanwu , 681 N.W.2d 411, 414 (Minn. App. 2004) (emphasis added), some judicial involvement is "inevitable" and acceptable, Wheeler , 889 N.W.2d at 815. These decisions have essentially read Johnson to only prohibit "direct involvement in the negotiations, [the] imposition of a plea agreement, or [the] promise to impose a particular sentence." Anderson v. State , 746 N.W.2d 901, 905 (Minn. App. 2008). It appears that the district courts have operated with this line of cases in mind.[2]
This case presents us with an opportunity to conform this appellate precedent to Johnson and Rule 15 of the Minnesota Rules of Criminal Procedure. Today, we reaffirm the principle that a district court judge should not participate in the plea bargaining negotiation itself, and we overrule court of appeals decisions to the extent that they are inconsistent with this principle.[3] A district court judge's function *565 is limited to approving or rejecting a plea "submitted for judicial acceptance." Johnson , 156 N.W.2d at 223 ; see also Minn. R. Crim. P. 15.04, subd. 3(1) (describing a district court judge's responsibilities as "reject[ing] or accept[ing] the plea of guilty on the terms of the [parties'] plea agreement " (emphasis added) ).
A judge does not violate this bright-line rule, however, by inquiring into the status of negotiations, sharing general sentencing practices, or disclosing nonbinding plea and sentencing information at the joint request of the parties.[4] These three functions are consistent with Johnson 's vision of a judge who is an "independent examiner" of the "propriety" of a plea "submitted for judicial acceptance," and not a participant in the plea bargaining. See Johnson , 156 N.W.2d at 223 & n.11.
Although nearly 50 years old, the principle recognized in Johnson remains as sound today as when it was first decided. See State v. Harris , 895 N.W.2d 592, 599 (Minn. 2017) (reaffirming the validity of the circumstantial-evidence standard of review as "the same today as it was when we decided [it] in 1928" and declining to consider it "outdated"). The parties have not articulated, nor can we conceive, any compelling reason to abandon this principle. Reaffirming this principle from Johnson is consistent with the principle of stare decisis. "We are 'extremely reluctant' to overrule our precedent absent a compelling reason to do so." Harris , 895 N.W.2d at 598 (quoting State v. Lee , 706 N.W.2d 491, 494 (Minn. 2005) ); see also Schuette v. City of Hutchinson , 843 N.W.2d 233, 238 (Minn. 2014) ("The doctrine of stare decisis ... promote[s] the stability of the law and the integrity of the judicial process.").
Moreover, this rule is consistent with Johnson 's view of, and our precedent regarding, the ideals of judicial impartiality and the separation of powers. It promotes judicial impartiality throughout the plea bargaining phase, just as we expect during trial and sentencing. See State v. Schlienz , 774 N.W.2d 361, 367 (Minn. 2009) (stating that impartiality of the judiciary is valued "at all stages of [criminal] proceedings"); see also Greer v. State , 673 N.W.2d 151, 155 (Minn. 2004) ("[I]mpartiality is the very foundation of the American judicial system."). In addition, the rule preserves the separation of powers and ensures that the prosecutor is not pressured by the court to negotiate a plea bargain, which is a discretionary function, not an obligation. See State v. Streiff , 673 N.W.2d 831, 836 (Minn. 2004) (discussing the "division of power" and how "bringing charges and plea bargaining ... rests almost entirely with the prosecutor"); State v. Andrews , 282 Minn. 386, 165 N.W.2d 528, 532 n.4 (Minn. 1969) (noting that the prosecutor "has no duty to initiate ... or make a [plea] bargain").
Finally, this approach protects defendants' interests. It helps further "[t]he ultimate *566 judicial responsibility ... to make reasonably certain that a person innocent of any crime has not been improperly induced to plead guilty." Johnson , 156 N.W.2d at 223 (emphasis omitted); see also id. at 223 n.9 ("Because 'there is no such thing as a beneficial sentence for an innocent defendant,' a plea discussion-plea agreement system can be justified 'only if the result is both to produce the needed guilty pleas and to persuade only guilty defendants to plead guilty.' " (quoting Comment, Official Inducements to Plead Guilty: Suggested Morals for a Marketplace , 32 U. Chi. L. Rev. 167, 176, 181 (1964) ) ). It also safeguards a defendant's right to an impartial judge at trial and sentencing. See Marshall v. Jerrico, Inc. , 446 U.S. 238, 242, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980) (concluding that the due-process right to "an impartial and disinterested tribunal" extends to "adjudicative proceedings" in both civil and criminal cases); Schlienz , 774 N.W.2d at 369 (suggesting that defendant's "substantial rights" were violated by sentencing judge whose "ability to be impartial" was "call[ed] into question"); State v. Dorsey , 701 N.W.2d 238, 252 (Minn. 2005) (discussing the due-process right to "fair trial before an impartial judge").
B.
Having resolved the threshold legal issue, we must next determine whether the district court here "participate[d] in the plea bargaining negotiation itself," Johnson , 156 N.W.2d at 223, when it sua sponte commented on the appropriateness of the parties' competing settlement offers. The court of appeals concluded that this conduct was not participation, but we disagree. In fact, in its postconviction order, the district court itself admitted that it was "unambiguously involved" in the plea bargaining negotiation before the negotiated plea was submitted.
To be sure, the district court's requests to be updated about the status of plea negotiations were appropriate and necessary to its ability to effectively manage its busy calendar. But the court participated in the plea bargaining negotiation itself when it gave unsolicited feedback in its email regarding the substance of the parties' proposed charges and sentences.[5] The court's email signaled its approval of the State's "realistic" plea and its unwillingness to accept Wheeler's contemplated plea, which tipped the scales in favor of the State and took away some of Wheeler's bargaining power. Indeed, Wheeler ultimately pleaded guilty to the offense of second-degree unintentional murder-the very offense that the court stated was more "realistic."
The email as a whole was problematic because the judge disclosed plea and sentencing information specific to the case without being requested to do so by the parties. The judge sua sponte rejected the defendant's offer of second-degree manslaughter and the proposed disposition of probation. The judge further commented on its tentative approval of the State's proposed plea to second-degree unintentional murder. These remarks are inconsistent with Johnson 's vision of the judge's limited role in plea negotiations because the judge examined the propriety of contemplated pleas that had not been "submitted *567 for judicial acceptance." Johnson , 156 N.W.2d at 223. The parties provided the judge with a status update; they did not ask the judge to participate.
Most of this feedback would not have been participation if it had been provided at the joint request of the parties. In that event, it would have been appropriate for the court to reject Wheeler's proposed charge of second-degree manslaughter and her proposed sentence of probation to 96 months in prison-which the court did by saying that it "isn't something this court is willing to do." It also would have been appropriate for the court to comment that the State's proposed charge of second-degree unintentional murder seemed "more realistic." Under that scenario, the court's solicited feedback would have neither usurped the role of counsel nor compromised the court's role as an independent examiner of a subsequently negotiated settlement. After all, the judge simply dispensed nonbinding plea and sentencing information about the parties' proffered pleas "submitted for judicial acceptance." Johnson , 156 N.W.2d at 223.
But one part of the judge's email would have been problematic, even if the parties had requested the court's involvement: the court's added feedback about how "a prison term the parties can agree on (something in the range of x months and 240 months)" seemed to be a "more realistic" disposition. Presented with option A from the defendant and option B from the State, the judge essentially became a participant in the plea bargaining and counteroffered option C. When the court generates and proposes a plea deal not presented by the parties-either a particular charge, a specific sentence, or both-it violates Johnson , even at the joint request of the parties. Put another way, and to be clear, parties cannot solicit judicial participation in the plea bargaining process itself.
In sum, the district court did more than merely inquire into the status of negotiations or disclose nonbinding information at the parties' request. We therefore conclude that the district court violated the principle recognized in Johnson and reaffirmed today when it participated in the plea bargaining negotiation itself by providing unsolicited comments regarding the parties' competing settlement offers and proposing a plea deal of its own.
II.
A.
We must next address the appropriate remedy for this violation.[6] This is a purely legal question, so the standard of review is de novo. See State v. Fairbanks , 842 N.W.2d 297, 304 (Minn. 2014). The court of appeals has adopted a rule of per se plea invalidity "[a]nytime a district court improperly injects itself into plea negotiations," even if the plea was otherwise "knowing, voluntary, and intelligent." Anyanwu , 681 N.W.2d at 414-15 (applying the rule of per se invalidity "irrespective of any demonstrated prejudice" to the defendant, who received "precisely what he requested").
We decline to adopt this blanket rule of per se invalidity and automatic plea vacatur. Plea withdrawal is appropriate when a manifest injustice occurs, but we are not persuaded that a manifest injustice exists *568 every time a judge participates in the plea bargaining negotiation itself. See Minn. R. Crim. P. 15.05. Instead, a manifest injustice occurs only when the court's participation in the plea bargaining negotiation makes the defendant's plea involuntary. Whether such a manifest injustice exists depends on the nature and extent of the judge's conduct, together with a variety of other factors bearing on the plea's validity.
Accordingly, overruling Anyanwu and its progeny, we hold that a Johnson violation should trigger a standard totality-of-the-circumstances inquiry into the voluntariness of the plea.[7] See Brady v. United States , 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("The voluntariness of [defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it."); State v. Raleigh , 778 N.W.2d 90, 96 (Minn. 2010) ("Whether a plea is voluntary is determined by considering all relevant circumstances.").
We decline to adopt any special test to assess and to remedy Johnson violations because judicial participation in plea bargaining negotiations is a specific type of pressure or coercion that is already accounted for by the standard voluntariness inquiry. See Raleigh , 778 N.W.2d at 96 (examining "all relevant circumstances," including "improper pressure or coercion," bearing on the voluntariness of defendant's plea). In addition, the remedy that we announce today is more congruent with our precedent regarding the validity and finality of pleas affirmed in court than is the per se rule of plea invalidity. See Andersen v. State , 830 N.W.2d 1, 11 (Minn. 2013) (discussing how "[s]olemn declarations in open court," such as affirming the voluntariness of a plea during the plea colloquy, "carry a strong presumption of verity" (quoting Blackledge v. Allison , 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ) ); Chapman v. State , 282 Minn. 13, 162 N.W.2d 698, 700 (1968) (referencing the "general policy favoring ... finality," including the "solemn commitment" of a guilty plea); see also State v. Ford , 397 N.W.2d 875, 878 (Minn. 1986) ("A guilty plea by a counseled defendant has traditionally operated ... as a waiver of all non-jurisdictional defects arising prior to the entry of the plea.").
B.
Whether a Johnson violation occurred is a question of law, but the voluntariness of a plea is a question of fact. State v. Danh , 516 N.W.2d 539, 544 (Minn. 1994). The postconviction court did not make any findings of fact about the voluntariness of Wheeler's guilty plea, did not assess the voluntariness of her plea, and did not hold an evidentiary hearing to develop the factual record. The court instead concluded that "the record contain[ed] nothing but undisputed facts showing that [Wheeler was] not entitled to *569 relief." Essentially, the court was operating under "an erroneous view of the law," which requires reversal. Brown v. State , 863 N.W.2d 781, 786 (Minn. 2015).
Wheeler, too, was operating under an error of law, because at the time she filed her petition for postconviction relief, the law did not require her to develop a factual record on the voluntariness of her guilty plea. We therefore reverse the decision of the court of appeals and remand to the district court to allow Wheeler to amend her postconviction petition under the rule of law announced in our opinion today. See State v. Her , 781 N.W.2d 869, 873 (Minn. 2010) (noting that "remand[ing] to allow ... an opportunity to develop the factual record on an issue is appropriate when, at the time of trial, the law did not require ... a factual record on the issue in question"). The postconviction court can then assess anew whether Wheeler is entitled to an evidentiary hearing and whether, under the totality of the circumstances, the district court's participation in the plea bargaining negotiation made Wheeler's plea involuntary.[8]
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.
Reversed and remanded.

These comments were likely dicta because they did not "squarely address[ ] the facts and legal issues before the court." Dickhoff ex rel. Dickhoff v. Green , 836 N.W.2d 321, 342 (Minn. 2013) ; see also State ex rel. Foster v. Naftalin , 246 Minn. 181, 74 N.W.2d 249, 266 (1956) (defining dicta as "expressions in a court's opinion which go beyond the facts before the court and therefore ... are not binding in subsequent cases"). The primary issue before us in Johnson was whether the defendant was denied due process when the district court accepted his guilty plea before fully ascertaining that he was aware of his constitutional rights. 156 N.W.2d at 220. We noted, however, that "[t]he principal ground of defendant's appeal" related to his "right ... to be protected from improvident 'plea bargaining,' " which we remarked "raise[d] questions of far-reaching potential." Id. at 222. We acknowledged that "[o]ur disposition of the case ... d[id] not require a complete consideration of all such questions at [that] time." Id. Nonetheless, we did comment at length about plea bargaining, and even included a syllabus point on the subject. See id. at 219, 222-23 ; see also Minn. Stat. § 480.06 (2016) ("In all cases decided by the court, it shall give its decisions in writing, ... together with headnotes, briefly stating the points decided ." (emphasis added) ).
Even if we assume that the Johnson court's comments were dicta, we may consider and rely upon dicta from our past opinions. See State v. Rainer , 258 Minn. 168, 103 N.W.2d 389, 395-96 (1960) (noting that dicta in a Minnesota Supreme Court case "should not be lightly disregarded[,]" particularly when it is "an expression of opinion on a question directly involved and argued by counsel though not entirely necessary to the decision"); see, e.g. , State v. Fenney , 448 N.W.2d 54, 58 & n.1 (Minn. 1989) (considering dicta from our prior opinions when addressing an issue of first impression).

See also 8 Henry W. McCarr & Jack S. Nordby, Minnesota Practice-Criminal Law & Procedure § 19:17 (4th ed. 2012) (explaining, after reviewing decisions from the appellate courts, "that a judge's proper role is not as a mere by-stander, nor as the wielder of either a rubber stamp or a veto in plea negotiations, but that of an evaluator and facilitator").

To the extent that court of appeals precedent has defined "participation" under Johnson to mean that a district court judge is only prohibited from (1) making promises, (2) threatening defendants, or (3) imposing a plea agreement to which the prosecution objects, we clarify that "participation" is not so narrowly defined. See, e.g. , Wheeler , 889 N.W.2d at 813 (suggesting that the district court should not "mak[e] any specific promises or threats" because "[t]he government may not produce a plea through actual or threatened physical harm"); Anderson , 746 N.W.2d at 905 ("Impermissible participation includes such things as the court's ... imposition of a plea agreement, or its promise to impose a particular sentence."). Of course, when the court of appeals deemed these three categories of conduct improper, it appropriately identified Johnson violations. We caution, however, that participation is not limited to this enumerated list.

Other jurisdictions explicitly address judicial participation in plea negotiations in their rules or statutes that govern criminal procedure. See, e.g. , Ariz. R. Crim. P. 17.4(a) ; Colo. R. Crim. P. 11(f)(4) ; N.J. R. Ct. 3:9-3; Or. Rev. Stat. Ann. § 135.432(1)(b) ; Vt. R. Crim. P. 11(e)(1). Because Rule 15 of the Minnesota Rules of Criminal Procedure does not address judicial participation, we refer this matter to the Supreme Court Advisory Committee on the Rules of Criminal Procedure for consideration of a procedural rule consistent with this opinion. See, e.g. , State v. Pederson , 600 N.W.2d 451, 455 (Minn. 1999) (announcing "a procedure that is not specifically addressed in the existing Rules" and thus "refer[ring] [it] to the Supreme Court Advisory Committee").

We do not reach the issue of whether the district court participated when it encouraged the parties to "try to resolve" the case to avoid the "serious situation" of having Wheeler's children testify. It is enough that the district court participated when it sent the email commenting on the propriety of proposed pleas. See State v. Newstrom , 371 N.W.2d 525, 533 (Minn. 1985) (declining to reach other issues in a case when one issue was dispositive).

This case does not involve plea participation that tipped the scales in favor of the defendant, so we do not decide what remedy would be appropriate in such a case. See, e.g. , State v. Moe , 479 N.W.2d 427, 429 (Minn. App. 1992) (involving an appeal by the State, which alleged that the trial court had participated in plea negotiations by "offer[ing] [defendant] a lower sentence in exchange for cooperating with police").

Our holding today is consistent with the United States Supreme Court's interpretation of the comparable Federal Rule of Criminal Procedure, Rule 11(c)(3). In United States v. Davila , the Supreme Court held that because the rule against judicial participation in plea negotiations is only "a prophylactic measure," not one "impelled by the Due Process Clause or any other constitutional requirement," violations of the rule do not "trigger automatic reversal" because they do not "undermine the fairness of [the] criminal proceeding as a whole." 569 U.S. 597, 610-11, 133 S.Ct. 2139, 186 L.Ed.2d 139 (2013). We recognize that Federal Rule of Criminal Procedure 11(h) specifically provides that " '[a] variance from the requirements of [Rule 11 ] is harmless error if it does not affect substantial rights.' " Id. at 606, 133 S.Ct. 2139 (quoting Fed. R. Crim. P. 11(h) ) (second alteration in original). Although the Minnesota rules on plea agreements contain no similar provision, Rule 31.01 of the Minnesota Rules of Criminal Procedure provides generally that "[a]ny error that does not affect substantial rights must be disregarded."

Although Wheeler raised the issue of judicial recusal and reassignment before the postconviction court, she did not make the argument before the court of appeals or in her petition for review. Accordingly, this issue is forfeited. See Figgins v. Wilcox , 879 N.W.2d 653, 658 (Minn. 2016). Upon remand, Wheeler can request that the case be reassigned to a different judge. See Minn. R. Crim. P. 26.03, subd. 14(3). Moreover, the district court could reassign the case of its own accord. See, e.g. , Dobrin v. Dobrin , 569 N.W.2d 199, 200 n.1 (Minn. 1997) (noting that the case happened to be "assigned to a different judge" on remand, even though no party requested reassignment); Desnick v. Mast , 311 Minn. 356, 249 N.W.2d 878, 883 n.2 (1976) (noting that "we expect[ed] that" the district court judge whose participation had been challenged "would prefer not to sit further on the case").