LARKIN, Judge
Appellant Minnesota Commissioner of Public Safety challenges the district court's rescission of the commissioner's revocation of respondent's license to drive after respondent was arrested for driving while impaired and tested positive for a controlled substance. The commissioner argues that the district court erred by granting relief under the due-process theory set forth in McDonnell . Because respondent did not establish the three elements of a McDonnell due-process claim, we reverse.
FACTS
On July 13, 2015, Officer Brandon Boesl of the University of Minnesota Police Department observed a vehicle traveling the wrong way down a one-way street. The officer stopped the vehicle and identified the driver as respondent Robert Grant Windsor. Officer Boesl arrested Windsor for driving while impaired. Officer Boesl read Windsor an implied-consent advisory, which advised Windsor that Minnesota law required him to take a test to determine if he was under the influence of a controlled substance and that "[r]efusal to take a test is a crime." Windsor agreed to take a blood test and then asked to call someone for legal advice. Windsor ultimately provided a sample of his blood for chemical testing, and his test results indicated the presence of amphetamine.[1]
The commissioner revoked Windsor's license to drive based on the results of the *73 blood test. Windsor petitioned the district court for rescission of the license revocation. The district court held an implied-consent hearing, at which the court received the following evidence: a peace-officer certificate, a copy of the implied-consent advisory that was read to Windsor, and a copy of Windsor's test results. Windsor did not testify at the hearing.
Following the hearing, Windsor submitted a memorandum of law in which he argued that his test results should be suppressed for two reasons. First, Windsor argued that the warrantless blood test violated the Fourth Amendment. Second, Windsor argued that Officer Boesl violated Windsor's right to due process by reading him an implied-consent advisory that "misstates current Minnesota law," because the advisory threatened criminal charges the state was not authorized to impose.
The district court rejected Windsor's Fourth Amendment argument, reasoning that Windsor "freely and voluntarily" consented to the blood test. However, the district court relied on McDonnell and found that the state violated Windsor's right to due process because "[i]t was not a crime for [Windsor] to refuse a warrantless request for a blood test" and that Windsor was therefore "misled when he was told refusal was a crime." The district court concluded, "Since the portion of the Implied Consent Advisory that informed [Windsor] that 'test refusal is a crime' was unconstitutional, his driver's license revocation is rescinded." In July 2016, the commissioner appealed the district court's rescission of Windsor's license revocation.
In December 2016, the commissioner moved to stay the appeal "pending the Minnesota Supreme Court's decision in the cases of State v. Tiffany Nicole Phillips , No. A16-0129, and Mitchell Edwin Morehouse v. Comm'r of Public Safety , No. A16-0277." This court granted a stay of this appeal pending the supreme court's decision in Phillips . In May 2017, the supreme court dismissed the appeal in Phillips , concluding that the appeal had become moot as a result of the defendant's death, and vacated this court's decision in that case. In June 2017, this court continued the stay of this appeal "pending decisions by the supreme court in Morehouse (A16-0277) and Johnson (A16-0502)." In May 2018, the supreme court decided Johnson and Morehouse . This court reinstated the appeal and directed the parties to file informal briefs addressing the application of the supreme court's decisions in Johnson and Morehouse to this case.
ISSUES
I. Did the district court err by rescinding the revocation of Windsor's license to drive on due-process grounds under McDonnell ?
II. Is Windsor entitled to a remand to develop a factual record regarding the prejudicial-reliance element of a McDonnell due-process claim?
ANALYSIS
I.
The commissioner challenges the district court's ruling that Windsor was entitled to rescission of his driver's license revocation on due-process grounds under McDonnell .[2] "Whether an implied-consent advisory violates a driver's due-process rights is a question of law, which this court *74 reviews de novo." Magnuson v. Comm'r of Pub. Safety , 703 N.W.2d 557, 561 (Minn. App. 2005).
In McDonnell , the supreme court held that an implied-consent advisory that threatened a criminal consequence the state was not authorized to impose violated a driver's due-process rights and that the violation required rescission of the commissioner's revocation of her license to drive. 473 N.W.2d at 855. In its recent decision in Johnson , the supreme court stated that a due-process violation under McDonnell does not occur "solely because a driver [has] been misled" by an implied-consent advisory. 911 N.W.2d at 508. Instead, the supreme court stated:
A license revocation violates due process when: (1) the person whose license was revoked submitted to a breath, blood, or urine test; (2) the person prejudicially relied on the implied consent advisory in deciding to undergo testing; and (3) the implied consent advisory did not accurately inform the person of the legal consequences of refusing to submit to the testing.
Id. at 508-09 (citing McDonnell , 473 N.W.2d at 853-55 ).
The supreme court determined that Johnson could not establish the first two elements of a McDonnell due-process violation because he refused to submit to blood and urine tests, reasoning that "there [was] no concern ... that [he] was prejudiced by relying on misleading statements by the officer about the consequences of refusing a test because [he] did not submit to testing." Id. at 509. Because Johnson could not establish the first two elements of a McDonnell due-process violation, "Johnson [was] not entitled to a rescission of his license revocation." Id.
Morehouse , decided the same day as Johnson , involved a driver who sought due-process relief under McDonnell after submitting to testing. 911 N.W.2d at 503-04. Thus, unlike Johnson , the first element of a McDonnell due-process violation was established in Morehouse . Id. at 505. "But, as to the second element, the district court did not find, nor did Morehouse claim, that he prejudicially relied on the implied consent advisory in deciding to submit to the test." Id. Because Morehouse did not "establish[ ] that he prejudicially relied on the implied consent advisory, [he was] not entitled to a rescission of his license revocation under McDonnell ." Id.
In sum, a party seeking due-process relief under McDonnell must establish that he submitted to testing, that he prejudicially relied on an implied-consent advisory in deciding to submit, and that the implied-consent advisory inaccurately described the legal consequences of test refusal. A district court errs by granting due-process relief under McDonnell if the party seeking relief fails to establish any of the elements of a McDonnell due-process claim.
The circumstances here are identical to those in Morehouse . Although Windsor submitted to a blood test, he did not establish that he prejudicially relied on the implied-consent advisory in deciding to submit to the test. He therefore is not entitled to due-process relief under McDonnell .
II.
Windsor contends that this court should remand his case "back to the District Court for a hearing to flesh out what prejudicial reliance if any, [existed] when he acquiesced to taking a blood test." Windsor relies on this court's decision in Olinger as support. 478 N.W.2d at 808. In Olinger , the commissioner argued that in McDonnell , the supreme court "intended that a due process violation be found only *75 if the driver establishes prejudice from the inaccurate advisory" and that "relief is limited to cases where the driver testifies that but for the advisory, he or she would have refused testing." Id. This court rejected that argument, holding that "[t]he improper threat constitutes the violation, and no showing of actual prejudice is required." Id. at 807-08.
Because Olinger held that, under McDonnell , drivers are entitled to due-process relief regardless of whether they make a showing of actual prejudice, id. at 808, and Johnson and Morehouse reiterate that due-process relief under McDonnell is only available if the record establishes that a driver "prejudicially relied on the implied consent advisory in deciding to undergo testing," Johnson , 911 N.W.2d at 508-09 ; Morehouse , 911 N.W.2d at 505, Johnson and Morehouse effectively overruled Olinger .
Windsor contends that a remand is appropriate based on the supreme court's overruling of Olinger , arguing that the prejudicial-reliance requirement is new, or that the law regarding that element was at least unclear. But in Johnson , the supreme court described its decision in McDonnell as having always required prejudicial reliance on an inaccurate implied-consent advisory to establish a due-process violation, stating that "in McDonnell we did not recognize a due process violation solely because a driver had been misled," but instead "recognized ... a due process violation in revoking a driver's license when the driver submitted to testing because the implied consent advisory inaccurately stated that refusing to submit to testing was a crime." 911 N.W.2d at 508-09. In McDonnell , the supreme court noted that "the district court determined that [the driver] would have refused to submit to testing had she not felt certain that criminal penalties would result." 473 N.W.2d at 855. And in Morehouse , the supreme court rejected the driver's McDonnell due-process claim based on the existing record, without remanding to give the driver an opportunity to develop a record regarding prejudicial reliance, which suggests that the supreme court did not view its articulation of the three-part test from McDonnell as new law.[3] 911 N.W.2d at 505.
The commissioner opposes a remand, noting that the supreme court upheld the license revocation in Morehouse "without the need to remand." The commissioner's point is well taken. As discussed above, in Johnson and Morehouse , the supreme court did not purport to set forth a new standard for establishing a McDonnell due-process violation. Instead, it reiterated the standard embodied in McDonnell . Any perceived unfairness resulting from the supreme court's approach does not justify a remand in this case any more than it would have in Morehouse , and the supreme court did not remand in Morehouse .
Here, like in Morehouse , the district court did not find that Windsor prejudicially relied on the implied-consent advisory in deciding to submit to the test. And Windsor concedes that the record does not contain evidence sufficient to establish such a finding. We do not discern a reason to provide Windsor greater relief-in the form of a remand to develop the record-than *76 the supreme court provided the driver in Morehouse . Under Morehouse , Windsor is not entitled to a remand. See 911 N.W.2d at 505.
DECISION
Because Windsor did not present evidence to establish, and the district court therefore did not find, that he prejudicially relied on the implied-consent advisory in deciding to submit to chemical testing, he is not entitled to due-process relief under McDonnell . And because the record does not contain evidence sufficient to support a finding of prejudicial reliance, we reverse the district court's order for rescission without remanding.
Reversed.

The district court noted that Windsor had a prescription for the drugs found in his blood sample and was not criminally charged for this incident.

The parties briefed several Fourth Amendment issues in addition to the McDonnell due-process issue. However, at oral argument to this court, the parties narrowed the issues to whether the district court erred in granting due-process relief under McDonnell and whether a remand is appropriate.

Windsor also relies on Wheeler v. State , arguing by analogy that Wheeler supports remand. See 909 N.W.2d 558, 567-69 (Minn. 2018) (overruling court of appeals' per se rule that any time a district court improperly injects itself into plea negotiations a guilty plea is invalid and remanding to allow defendant to develop a factual record regarding the voluntariness of her plea). It is not necessary to consider whether Wheeler supports a remand by analogy because Morehouse is directly on point, and the supreme court did not remand in that case.