*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0549**

State of Minnesota,
Respondent,

vs.

Joseph Robert Clay,
Appellant.

**Filed March 23, 2026**
**Affirmed in part, reversed in part, and remanded**
**Larson, Judge**

Redwood County District Court
File No. 64-CR-23-357

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Shannon M. Ness, Redwood County Attorney, Redwood Falls, Minnesota; and

Travis J. Smith, Special Assistant County Attorney, Smith & Johnson, Attorneys at Law, Slayton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Larson, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

In this direct appeal, appellant Joseph Robert Clay challenges the constitutional validity of his guilty plea. Because we conclude Clay entered a voluntary and accurate

guilty plea, we affirm the validity of his guilty plea. In the alternative, Clay argues that we must reverse and remand for correction of his warrant of commitment. Because we agree that the warrant of commitment incorrectly includes a conviction for unlawful possession of ammunition, we reverse and remand for the district court to correct the warrant of commitment.

## FACTS

In May 2023, a police officer observed Clay driving over the speed limit. The officer activated his emergency lights and stopped Clay's vehicle near the end of a residential driveway. Clay then exited his vehicle, fleeing down the nearby driveway and behind a garage. The officer called for Clay to stop running, but Clay entered the house. Two witnesses then exited the house and told the officer that Clay was inside. The officer located Clay inside the house and escorted him out. The officer then searched behind the garage and located a pistol with nine rounds of ammunition in its magazine. The officer placed Clay under arrest.

Respondent State of Minnesota charged Clay with one count of possession of a firearm by an ineligible person under Minn. Stat. § 624.713, subd. 1(2) (2022) (firearm charge); one count of possession of ammunition by an ineligible person under Minn. Stat. § 624.713, subd. 1(2) (ammunition charge); and one count of fleeing on foot under Minn. Stat. § 609.487, subd. 6 (2022) (fleeing charge).[1] At his first appearance, the district court set an unconditional bail amount at $60,000 and a conditional bail amount at $40,000. The

---

[1] The parties agree that Clay was ineligible to possess a firearm or ammunition at the time of the offense.

district court informed Clay that if he elected to post the conditional bail, he would need to remain law-abiding, among other conditions. About one week later, Clay posted a conditional bail bond for $40,000 and was released from custody.

On the morning the case was set for a jury trial, the parties reached a plea agreement. As part of the plea agreement, Clay agreed to plead guilty to all counts, and the state "agree[d] to allow [Clay] to remain out of custody until sentencing." The plea did not include an agreement on the length of Clay's sentence. On the record, Clay confirmed that he had an opportunity to speak with his attorney regarding the plea petition and waived his right to a jury trial.

Clay then pleaded guilty on all counts. Using leading questions, the district court elicited a factual basis for each charge. The district court then accepted his plea. Following the state's recommendation, the district court allowed Clay to remain out of custody until sentencing under the terms of his conditional release.

After his guilty plea but prior to sentencing, Clay was arrested on new charges. Based on these new charges, the state filed a conditional-release-violation notice alleging that Clay had violated his conditional release when he failed to remain law-abiding.[2] The district court addressed the state's conditional-release-violation notice during Clay's first hearing on the new charges. At this hearing, the state acknowledged that pursuant to the plea agreement, the state had agreed to recommend that Clay remain out of custody until

_____

[2] The offense date for one of the new charges was October 9, 2024, before Clay pleaded guilty. But the other two new charges had a December 10, 2024 offense date, which was after Clay pleaded guilty.

3

sentencing on the charges subject to this appeal.  But, based on the new charges, the state requested that the district court hold Clay in custody.  The district court deferred setting bail on the new charges until after the sentencing hearing for the charges subject to this appeal.  The district court then revoked Clay's conditional release and ordered that he be held without bail pending the sentencing hearing.

Prior to sentencing, Clay moved to withdraw his guilty plea, arguing withdrawal would be "fair and just" because the "allure of remaining out of custody . . . clouded his understanding" such that he did not comprehend the ramifications of pleading guilty.  *See* Minn. R. Crim. P. 15.05, subd. 2.  The state argued that the district court released Clay based upon specified conditions—which he violated—and therefore he was not entitled to withdraw his guilty plea.  The district court, agreeing with the state's argument, denied Clay's motion to withdraw his guilty plea.

At sentencing, Clay stated again that he had "a lot" on his mind when he pleaded guilty and asserted that he was "innocent."  The district court reminded Clay that he entered a guilty plea at the prior hearing.  The district court then sentenced Clay to a 60-month prison term for the firearm charge and a 90-day prison term for the fleeing charge, to be served concurrently.[3]  The warrant of commitment reflects that Clay was convicted of all three charges.

Clay appeals.

---

[3] At the sentencing hearing, the district court did not indicate if it entered a conviction for the ammunition charge but expressly declined to impose a sentence for the ammunition charge.

4

**DECISION**

Clay raises two arguments in this direct appeal. First, he challenges his guilty plea arguing it was constitutionally involuntary and inaccurate. Second, and in the alternative, Clay argues that we must reverse and remand because his warrant of commitment erroneously includes a conviction for the ammunition charge. We address each argument in turn.

**I.**

Clay challenges the constitutional validity of his guilty plea. "An appellant may challenge a guilty plea's validity in the first instance on direct appeal." *State v. Lawrence*, 982 N.W.2d 772, 775 (Minn. App. 2022).[4] "We review whether a defendant entered a valid guilty plea de novo." *Id.* "If a defendant entered an invalid guilty plea, we reverse and remand for the district court to allow a defendant to withdraw their guilty plea." *Id.*

"To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *see also State v. Lyle*, 409 N.W.2d 549, 552-53 (Minn. App. 1987) (applying the constitutional standard to a plea petition). Here, Clay argues his guilty plea was involuntary and inaccurate. We consider both arguments below.

---

[4] The parties argue over the applicability of the manifest-injustice standard under Minn. R. Crim. P. 15.05, subd. 1. The state argues that Clay's challenge under this standard is forfeited on appeal. But Clay may challenge, and we may review, the constitutional validity of a guilty plea on direct appeal. *See Lawrence*, 982 N.W.2d at 775.

### A.    Voluntariness

Clay argues he entered an involuntary plea.  Voluntariness refers to "what the parties reasonably understood" the terms of the plea agreement to be and whether the defendant pleaded guilty due to "improper pressure or coercion."  *Raleigh*, 778 N.W.2d at 96. "Whether a plea is voluntary is determined by considering all relevant circumstances."  *Id.*

Clay first asserts that his plea was involuntary because the state breached the plea agreement when it filed the conditional-release-violation notice and requested that he be held in custody pending sentencing.  "A guilty plea is involuntary when it rests in any significant degree on an unfulfilled . . . promise."  *Uselman v. State*, 831 N.W.2d 690, 693 (Minn. App. 2013) (quotation omitted).  To determine whether the state breached a plea agreement, we look at the parties' reasonable understanding of the terms of the agreement. *See State v. Wukawitz*, 662 N.W.2d 517, 527 (Minn. 2003).  "On demonstration that a plea agreement has been breached, the court may allow withdrawal of the plea."  *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000).

Here, the state "agree[d] to allow [Clay] to remain out of custody until sentencing." Clay then pleaded guilty, and upon accepting his plea, the district court, following the state's request, allowed Clay to remain out of custody and reminded him that he was still required to comply with the conditions of his release, which included the condition to remain law-abiding.

Based upon the record, we conclude that the state did not breach the plea agreement. Instead, the record shows that the state fulfilled its promise when it recommended to the district court that Clay remain out of custody following his guilty plea.  Further, the state

6

did not breach the plea agreement when it filed the conditional-release-violation notice because the record demonstrates that Clay understood he needed to comply with the conditions of his release to remain out of custody pending sentencing, notwithstanding the plea agreement.

Relatedly, Clay argues that his plea was involuntary because the district court impermissibly participated in the plea negotiation when it imposed conditions on his release. A district court "must not participate in plea negotiations." Minn. R. Crim. P. 15.04, subd. 3(1); *see also Wheeler v. State*, 909 N.W.2d 558, 564-65 (Minn. 2018) (stating that a district court judge "should not participate" in the plea negotiations). When a judge becomes involved in the plea-bargaining process, there is an inherent risk that the defendant will feel pressured to plead guilty, potentially leading to an involuntary plea. *See Wheeler*, 909 N.W.2d at 567-68. Thus, the district court can approve or reject a plea but cannot effectively become a party to negotiations. *Id.* at 564-65. The district court may, however, inquire about the status of negotiations, share general sentencing practices, and provide "nonbinding plea and sentencing information at the joint request of the parties" without becoming improperly entangled in the plea-bargaining process. *Id.* at 565.

We are not persuaded that the district court impermissibly participated in plea negotiations when it released Clay prior to sentencing subject to conditions. Here, Clay pleaded guilty, and the district court accepted his plea at the plea hearing. As such, the district court had the authority to impose conditions of continued release, wholly apart from any plea agreement Clay had with the state. *See* Minn. R. Crim. P. 27.01 (allowing the court, after conviction but before sentencing, to "continue or alter the terms of release");

7

*State v. Bigelow*, No. A20-0600, 2021 WL 561536, at *3-4 (Minn. App. Feb. 16, 2021), *rev. denied* (Minn. Apr. 20, 2021).[5]  Indeed, the district court could have denied the state's request and taken Clay into custody until the sentencing hearing.  *See Bigelow*, 2021 WL 561536, at *3.  Instead, the district court imposed reasonable conditions on Clay's release to ensure public safety.

For these reasons, we conclude Clay entered a voluntary guilty plea.

**B.     Accuracy**

Clay argues that he entered an inaccurate plea.  "The accuracy requirement protects a defendant from pleading guilty to a more serious offense than that for which [the defendant] could be convicted if [the defendant] insisted on [the] right to trial."  *Raleigh*, 778 N.W.2d at 94.  For a guilty plea to be accurate, it must be supported by a proper factual basis, with "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which [the defendant] desires to plead guilty."  *State v. Iverson*, 664 N.W.2d 346, 349-50 (Minn. 2003) (quotation omitted).  The adequacy of the factual basis is usually established by the defendant explaining the circumstances surrounding the crime.  *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994).

Clay first argues that his plea was inaccurate because his admissions were obtained using leading questions.  The supreme court has generally "cautioned against the use of exclusively leading questions to establish a proper factual basis for a guilty plea."  *Lussier v. State*, 821 N.W.2d 581, 589 (Minn. 2012); *see also State v. Jones*, 7 N.W.3d 391, 396

---

[5] This case is nonprecedential and, therefore, not binding.  We cite nonprecedential cases for persuasive authority only.  *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

(Minn. 2024). Although the use of leading questions is generally disfavored, "it does not by itself invalidate a guilty plea." *Barnslater v. State*, 805 N.W.2d 910, 914 (Minn. App. 2011); *see also Jones*, 7 N.W.3d at 396 (noting that the supreme court has "never held" that responding to "leading questions on its own invalidates a guilty plea"). As such, the district court's use of leading questions does not invalidate Clay's guilty plea. And upon review of the record, we conclude that Clay's guilty plea is supported by a sufficient factual basis and none of his statements at the plea hearing negated an essential element of the offenses.

Clay argues second that his guilty plea was inaccurate because he asserted his innocence at the sentencing hearing. Generally, a plea is inadequate if the defendant "makes statements that negate an essential element of the charged crime," unless the statement is subsequently withdrawn or rehabilitated. *Jones*, 7 N.W.3d at 396 (quotation omitted). However, unlike in *Jones*, Clay did not negate an element of the offense *during his plea colloquy*—instead, he asserted his innocence at his sentencing hearing when he was not under oath. It is well established that we review the sufficiency of the factual basis for a plea from the record made at the time the defendant entered—and the district court accepted—the guilty plea.[6] *See, e.g.*, *State v. Lillemo*, 410 N.W.2d 66, 69 (Minn. App.

---

[6] To the extent Clay contends his statements of innocence were made before the district court accepted his guilty pleas, we disagree with this characterization of the record. Clay made no statements regarding his innocence at the plea hearing. And the district court accepted Clay's guilty plea at the plea hearing and reiterated on subsequent occasions— prior to his claims of innocence at sentencing—that his plea had been entered.

9

1987).  Accordingly, we are not persuaded that Clay's statements at the sentencing hearing render his guilty plea inaccurate.

For the foregoing reasons, we conclude Clay entered a constitutionally valid guilty plea.

## II.

In the alternative, Clay argues we must reverse and remand for correction of his warrant of commitment.  Minnesota law generally prohibits multiple convictions and sentences if the defendant's criminal conduct is part of the same criminal act.  *See* Minn. Stat. §§ 609.035, subd. 1, .04 (2022).  Clay and the state agree that the warrant of commitment erroneously reflects that the district court entered convictions for both the firearm charge and the ammunition charge.  We also agree.

A defendant charged with both unlawful possession of a firearm and unlawful possession of ammunition as a result of possessing a single loaded firearm may be convicted and sentenced for only one of those counts—not both.  *See State v. Nowels*, 941 N.W.2d 430, 443 (Minn. App. 2020) ("[T]the possession of a single firearm loaded with ammunition constituted one course of unlawful conduct and is not subject to multiple convictions and sentences."), *rev. denied* (Minn. June 16, 2020).  Accordingly, we reverse and remand for the district court to vacate Clay's conviction for the ammunition charge.

**Affirmed in part, reversed in part, and remanded.**